IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| CATERPILLAR INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| ESCO CORPORATION, | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | DEMAND FOR JURY TRIAL |

### VERIFIED COMPLAINT

Plaintiff Caterpillar Inc. ("Caterpillar"), through its counsel, John M. Touhy and Edward H. Williams of Baker & Hostetler LLP, and Timothy L. Bertschy and John P. Heil, Jr. of Heyl, Royster, Voelker & Allen, complains against defendant ESCO Corporation ("ESCO") as follows:

### NATURE OF THE ACTION

1. Caterpillar, among other things, is a manufacturer of heavy equipment for use in construction, mining and other applications. ESCO is a manufacturer of, among other things, ground engaging tools that can be incorporated into a variety of types of heavy equipment manufactured by Caterpillar.

2. Caterpillar and ESCO are parties to a Master Purchase Agreement (the "MPA") in which ESCO agreed to provide exclusively to Caterpillar a ground engaging tool system that ESCO called the K-System and later became known as the K-Series. ESCO represents that it holds patents on these products. Under the MPA, ESCO promised to provide Caterpillar with all of Caterpillar's requirements for this exclusive product and that it would not sell this to anyone else. In fact, given that Caterpillar needed to ensure a stable supply of such key components,

ESCO promised to give Caterpillar's Firm Orders (a term defined in the MPA) for K-Series products "first priority on ESCO's production capacity."

3.  Over the ensuing years, ESCO supplied Caterpillar with its K-Series product. The K-Series product was integrated into many of Caterpillar's premier products, such as excavators and loaders. It is essential to Caterpillar's business that ESCO fulfill its contractual obligation to supply Caterpillar with its requirements for the K-Series product so that Caterpillar can maintain a constant and reliable source of this integral product.

4.  Periodically, ESCO fell behind in maintaining the production levels required by Caterpillar. At those times, Caterpillar worked with ESCO to ensure a continuous supply of these critical products. ESCO's chronic tardiness worsened over time. As of December 1, 2011, ESCO was behind on Firm Orders by approximately 2500 tons of K-Series product, a situation that threatens Caterpillar's continuity of supply.

5.  In or around April 2011, ESCO represented to Caterpillar that it would supply Caterpillar's 2012 forecasted requirements as required by the MPA. In reliance on ESCO's representation and the MPA, Caterpillar continued to work with ESCO to solve ESCO's on-going supply problems. However, in or around September 2011, ESCO reversed position and proposed to reduce its future supply. At these reduced levels, ESCO would not be delivering to Caterpillar its K-Series requirements, thereby placing Caterpillar and its customers at the risk of serious supply disruption.

6.  The parties have been discussing the supply problem and exploring various solutions, such as arranging for alternative suppliers to ramp up and commence the manufacture of K-Series for Caterpillar. During these discussions, however, Caterpillar sought an assurance from ESCO that it would supply Caterpillar with its requirements until such time as alternative

suppliers are ready to manufacture the K-Series in a reliable and predictable manner and/or until Caterpillar had sufficient time to develop its own system. Once given the go ahead, Caterpillar predicts that alternative suppliers will be in a position to handle Caterpillar's requirements for the K-series products that ESCO is most critically under-supplying in approximately 9 to 12 months.

7. ESCO refused to supply Caterpillar with an assurance that it would meet Caterpillar's requirements, instead telling Caterpillar that it disagreed with Caterpillar's interpretation of the MPA but failing to tell Caterpillar how ESCO interprets their contract.

8. In addition, ESCO threatened patent litigation if Caterpillar continues developing its own system. Specifically, ESCO threatened one component of an alternative system known as Caterpillar's CapSure® retention system used in Caterpillar's Ground Engaging Tools systems ("the CapSure® system").

9. ESCO has breached the MPA because it has not filled Caterpillar's outstanding Firm Orders in a timely fashion. ESCO has also anticipatorily breached its obligation to supply Caterpillar with its K-Series product requirements in the future by (1) stating that it was going to reduce the amounts supplied to Caterpillar and (2) failing to provide Caterpillar with an adequate assurance of future performance. In order to protect its supply chain, the businesses of its customers and the businesses of all users of Caterpillar-manufactured heavy equipment that uses K-Series, this Court should order ESCO to perform its contractual commitments. ESCO must provide Caterpillar with its requirements for the K-Series in a timely manner. Caterpillar seeks specific performance and preliminary and permanent injunctive relief.

## JURISDICTION AND VENUE

10. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds the value of $75,000, exclusive of costs and interest, and there is

complete diversity between ESCO and Caterpillar, which are citizens of different states as further alleged below.

11.   This Court also has subject matter jurisdiction under the Federal Declaratory Judgment Act, Title 28, United States Code §§ 2201 and 2202, and under Title 28, United States Code §§ 1331 and 1338(a) because Caterpillar seeks a declaration that each claim of the '274 Patent, the '684 Patent, and the '685 Patent (identified below) are invalid and/or not infringed pursuant to the Patent Laws of the United States, 35 U.S.C. § 101, *et seq.*

12.   This Court further has supplemental jurisdiction under 28 U.S.C. § 1367 because the claims asserted are so related that they form part of the same case or controversy under Article III of the United States Constitution.

13.   This Court has personal jurisdiction over ESCO because ESCO purposely availed itself of the Illinois forum by entering into contracts for the supply of K-Series with Caterpillar.

## PARTIES

14.   Caterpillar is a Delaware corporation.  Caterpillar's principal place of business is located at 100 N.E. Adams Street, Peoria, Illinois 61629.  Among other things, Caterpillar develops and manufactures heavy machinery for use in a host of applications throughout the world.

15.   ESCO is an Oregon corporation that, among other things, specializes in selling ground engaging tools.  On information and belief, ESCO's principal place of business is 2141 NW 25th Avenue, Portland, Oregon 97210.  ESCO is identified as the assignee of issued United States Patent No. 7,178,274 ("the '274 Patent"), United States Patent No. 7,640,684 ("the '684 Patent"), and United States Patent No. 7,640,685 ("the '685 Patent"), part of the subject of this suit.  Copies of the '274 Patent, the '684 Patent, and the '685 Patent are attached hereto as Exhibits 3-5 respectively.

## **ALLEGATIONS**

16. ESCO approached Caterpillar with its K-Series product in 2002. The K-Series is system that is attached to heavy equipment for digging. It includes an adapter that attaches to the machine and tips that dig into the ground. Caterpillar uses the K-Series on some of its premier heavy equipment, including its excavators and loaders. Caterpillar estimates that there are over 146,000 Caterpillar machines that use K-Series in the field.

17. The parties entered into negotiations for Caterpillar to become the exclusive user of the K-Series and for ESCO to provide Caterpillar with all of its product requirements. On information and belief, at the time of contracting, ESCO had excess capacity and was therefore eager to supply Caterpillar with all of its K-Series requirements even if that meant compromising on profit margin.

18. On or around November 19, 2002, Caterpillar and ESCO entered into the Master Purchase Agreement (the "MPA") for ESCO exclusively to supply Caterpillar with its requirements of the K-Series. A copy of the MPA is attached as Exhibit 1.

19. Under the MPA, ESCO agreed to provide Caterpillar with its requirements for seven different sizes of the K-Series – the K80, K90, K100, K110, K130, K140 and K160. Subsequently, a size K150 replaced the K140 and a size K170 replaced the K160.

20. Under the MPA, Caterpillar notified ESCO of its "purchase requirements" for these different versions of the K-Series in two phases. On the first of each month, Caterpillar notified ESCO via a "Purchase Order Release" of its (1) "firm requirements" for the upcoming two months (referred to as "Firm Orders") and (2) its "tentative requirements" for the nine months thereafter. Ex. 1, ¶ 7.b.

21. In addition, the parties recognized that "after the initial ramp up for Products, in the regular ordering process, it will be a common occurrence that a significant number of orders

5

will be short dated (Caterpillar orders contemplated to be filled in less than sixty (60) days)." Ex. 1, ¶ 7.c. ESCO agreed to use its "best efforts" to fill short orders and to "maintain processes with contingency plans in order to do so." *Id.* It was only schedule changes that occurred "less than four (4) weeks from the scheduled shipment date" that would "not be accepted without prior consent by ESCO, which consent shall not be unreasonably denied or delayed." *Id.* Thus, ESCO could only reject short orders less than four weeks out – all others were automatically accepted by ESCO by operation of the MPA.

22. ESCO promised Caterpillar it would devote whatever ESCO production capacity necessary to fill all of Caterpillar's Firm Orders in a prompt and regular fashion. The MPA states, "At all times, Caterpillar shall have first priority on ESCO's production capacity to the extent of the Firm Orders for Product placed by Caterpillar, and ESCO shall devote sufficient first priority production capacity to assure that Caterpillar's Firm Orders for Product are promptly and regularly filled." Ex. 1, ¶ 7.d.

23. At the same time the parties executed the MPA, they also executed a License Agreement (the "LA"). A copy of the LA is attached as Exhibit 2. To the extent that Caterpillar required more than 2000 tons of any of K130, K140 and K160 in a calendar year, the LA granted Caterpillar a license to produce up to 25% "of the previous calendar year's aggregate volume (in tonnage) of purchases" at one of Caterpillar's subsidiaries. Ex. 2, ¶ 21. Caterpillar was not required to exercise its limited license rights in whole or in part. Nothing in the LA in any way abrogated ESCO's obligation to supply Caterpillar with all of its requirements.

24. Caterpillar periodically explored using its license rights during the times that ESCO was expressing difficulty in meeting Caterpillar's requirements in a timely fashion. However, Caterpillar was unable to obtain the information and cooperation it needed from ESCO

to implement its license rights until recently. Under the LA, ESCO was obligated to provide this information and cooperation. Ex. 2, ¶ 2.6. ESCO breached the LA by not doing so. Even if Caterpillar had fully exercised its limited license rights and been able to implement them, it could only have manufactured up to 25% of its prior year orders. It would have been contractually obligated to purchase the rest of its requirements from ESCO.

25. Even though it has no obligation to do so, Caterpillar has begun obtaining K-Series products through the exercise of its rights under the LA and another license for a supplier in the United Kingdom to supply Caterpillar with K90 products. These limited rights do not provide Caterpillar with enough additional tonnage to make up the severe shortfalls being caused by ESCO's failure to supply Caterpillar.

26. As reflected in the MPA, it is essential to Caterpillar's business that its requirements for the K-Series are met in a timely manner. If ESCO fails to supply Caterpillar with its requirements, that will cause irreparable harm for which there would be no adequate remedy at law. Caterpillar would not be able to incorporate the K-Series into its machines, requiring it to seek alternative solutions that would take a significant amount of time to implement. Production lines would shut down. Caterpillar would not be able to supply its customers (largely independent dealers of Caterpillar equipment) with new machines that the dealers in turn sell to end users. This will damage Caterpillar's reputation, harm its good will and result in lost profits.

27. In addition, the machines in the field routinely require replacement parts. The K-Series contemplates the periodic replacement of the tips that experience wear in the ordinary course of digging. The K-Series adaptor may also need to be replaced in its entirety in some instances that can occur in the field. If the supply of K-Series parts were cut off, end users

around the world would be deprived of the use of their machines, causing sweeping injuries that may lead to litigation against Caterpillar, its dealers, ESCO and others.  These end users would also suffer a host of irreparable harms.  Caterpillar's reputation, good will and future profits will be harmed.

28. At the time of contracting, ESCO knew of these sweeping impacts on Caterpillar's business and others if it failed to provide Caterpillar with its K-Series requirements in a timely fashion.  In fact, ESCO has periodically used that leverage during the relationship to negotiate price increases and concessions from Caterpillar.

29. While ESCO has not always delivered K-Series components on time and in full compliance with the MPA, so long as Caterpillar agreed to ESCO's pricing terms, Caterpillar was able to obtain sufficient parts from ESCO to keep Caterpillar's assembly lines moving and to supply replacement parts as needed.  ESCO also experienced significant quality issues over the years, some of which still persist, but Caterpillar has worked with ESCO to resolve those issues and to keep moving forward.

30. Recently, the situation has deteriorated.  ESCO is currently at least 2500 tons behind on delivery of Caterpillar's Firm Orders in breach of the MPA.  ESCO has not given those orders "first priority" as it agreed to do in the MPA.  Caterpillar's stock of K-Series parts has been seriously depleted as a result.

31. Caterpillar has attempted to reach a solution with ESCO to maintain Caterpillar's supply chain.  The parties have been discussing a new license that would expressly permit different suppliers to manufacture K-Series parts for Caterpillar.  However, the parties have not yet been able to reach an accord.

32. As these negotiations progressed, Caterpillar sought an assurance from ESCO that ESCO would continue to supply Caterpillar's requirements, at least until such time that an alternative solution was agreed upon and implemented, which could take many months. Caterpillar stated to ESCO:

> Caterpillar is seeking by this letter an assurance from ESCO that it will supply Caterpillar's requirements of K-Series products from now through the time that Caterpillar can obtain reliable sources for the K-Series products. This request is made under the Illinois UCC's right to request assurance of performance provision.

Ex. 6.

33. ESCO's response covered a variety of issues, but its only attempt to provide an adequate assurance was as follows:

> Your email seeks "assurance from ESCO that it will supply Caterpillar's requirements of K-Series product from now through the time that Caterpillar can obtain reliable alternative sources for the K-Series products." We do not believe that you have accurately described ESCO's obligation, but you may be assured that ESCO will continue to act in good faith to meet its supply obligations under the parties' K-Series agreements notwithstanding Caterpillar's failure to honor its ordering and forecasting obligations, or to take advantage of existing and expanded opportunities to utilize Caterpillar and third-party manufacturing sources to meet demand for the K-Series products.

Ex. 7.

34. ESCO apparently takes the position that the MPA is not a requirements contract, but it does not share with Caterpillar how it interprets its "obligation" under the MPA. By taking this position, ESCO has repudiated the MPA, which does require ESCO to supply Caterpillar's requirements. Simply stating that ESCO would act in "good faith" regarding some unspecified interpretation of the MPA provides no assurance of future performance. In effect, ESCO told Caterpillar that it will not supply Caterpillar's requirements and further compounded

9

Caterpillar's insecurity regarding future performance by not telling Caterpillar what ESCO will do.

35. Furthermore, around the same time, ESCO informed Caterpillar that it would not meet Caterpillar's projected future requirements. In short, ESCO breached its obligation to supply Caterpillar with its K-Series requirements and made it clear that it will not honor its contractual obligation to supply Caterpillar with its K-Series requirements in the future.

36. ESCO's objections to Caterpillar's performance are not valid. Caterpillar was never under any contractual obligation to use the limited license rights provided for in the LA. Nothing in the LA limited ESCO's obligation to supply Caterpillar with its requirements and to give Caterpillar's orders "first priority" at its production facilities.

37. Similarly, Caterpillar honored its forecasting obligations. Caterpillar provided ESCO with its Firm Orders reflecting its "firm requirements" for the upcoming two months at least once a month as required by the MPA. It also provided ESCO with its "tentative requirements" for the subsequent nine months. In fact, Caterpillar routinely provided ESCO with even more current information.

38. ESCO's real motive in raising Caterpillar's forecasting is to criticize Caterpillar because its forecasts periodically varied as business conditions changed, most dramatically during the recent recession. But Caterpillar was within its rights to vary its forecasts as business conditions changed. The only MPA term applicable to Caterpillar's forecasting provides that "*[t]o the extent practicable, consistent with the needs of Caterpillar*, Caterpillar shall schedule requirements and orders for Product from ESCO so as to permit reasonably level production by ESCO." Ex. 1, ¶ 7.d (emphasis added). Caterpillar is in full compliance with all of its obligations under the MPA. ESCO's claim that Caterpillar violated the MPA is not true.

39. ESCO has never disclosed to Caterpillar what production capacity it maintains. However, based on Caterpillar's visits to ESCO's facilities, it is clear that its production capacity far exceeds Caterpillar's K-Series requirements. ESCO is devoting its production capacity to other customers in breach of its contractual obligation under the MPA to give Caterpillar "first priority" on ESCO's production capacity to Caterpillar.

40. ESCO has told Caterpillar that its profit margin on its supply to its other customers is higher than its profit margin on its supply to Caterpillar of its K-Series requirements. ESCO has even cited this alleged profit margin difference as a reason why it will not supply Caterpillar with its requirements. That is not a valid reason to breach contractual obligations.

41. ESCO can and is contractually obligated to supply Caterpillar with its K-Series requirements and has breached the MPA by electing not to do so.

42. In addition to ESCO's breach of the MPA by failing to supply Caterpillar with its requirements and by failing to provide adequate assurances that it would supply Caterpillar with its requirements in the future as required by the MPA, ESCO has also threatened Caterpillar with patent infringement to the extent Caterpillar attempts to develop and implement alternative ground engaging tool systems.

43. In July 2011, ESCO sent a letter to Caterpillar stating ESCO's purported belief that Caterpillar's LM Series tooth system and other ground engaging tools using the CapSure® system might infringe the '274 Patent, the '684 Patent, and the '685 Patent. A copy of this letter is attached hereto as Exhibit 8. As a result, Caterpillar has a reasonable apprehension that ESCO will sue Caterpillar for infringement of the '274 Patent, the '684 Patent, and the '685 Patent.

11

44. Caterpillar believes and asserts that it does not infringe any valid claim of the '274 Patent, the '684 Patent, and the '685 Patent.

## CLAIMS FOR RELIEF

### Count I

(Breach of Contract – Specific Performance)

45. Caterpillar re-alleges paragraphs 1-44.

46. The MPA is a valid, binding, and enforceable requirements contract.

47. There is no ambiguity, doubt, or uncertainty with respect to the MPA's terms. ESCO is obligated to supply Caterpillar with its K-Series requirements and to give Caterpillar's orders first priority.

48. Caterpillar complied with and performed all of its obligations under the MPA.

49. ESCO has refused to perform its part of the contract by failing to fill Caterpillar's Firm Orders in a timely fashion. ESCO has further committed an anticipatory breach of the MPA by refusing to assure Caterpillar that it will supply Caterpillar with its future requirements.

50. Monetary damages are an inadequate remedy.

51. The K-Series is a unique product for which ESCO represents to hold the patents. The MPA is a requirements contract that designates ESCO as a particular and peculiarly available source.

### Count II

(Preliminary and Permanent Injunctive Relief)

52. Caterpillar re-alleges paragraphs 1-51.

53. Caterpillar seeks an order from this Court requiring ESCO to provide Caterpillar with its K-Series requirements at the agreed upon prices and in full conformity with the terms of the MPA.

54. Caterpillar has a clearly ascertained right in need of protection.

55. Caterpillar has a substantial likelihood of success on its claims against ESCO.

56. In the absence of injunctive relief, Caterpillar will suffer irreparable harm, and Caterpillar does not have an adequate remedy at law.

**Count III**

(Request for Declaratory Judgment)

57. Caterpillar re-alleges paragraphs 1-44.

58. By reason of the foregoing facts, a ripe and justiciable controversy exists between the parties regarding whether Caterpillar infringes any valid claim of the '274 Patent, the '684 Patent, and the '685 Patent. *See* Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201, 2202.

59. Declaratory relief is necessary and appropriate in this case because the Court's judgment on the issues of patent invalidity and non-infringement will afford Caterpillar relief from the uncertainty and controversy surrounding ESCO's threats. Caterpillar has reasonable apprehension that ESCO will file a patent infringement lawsuit. Accordingly, Caterpillar asks this Court to declare that Caterpillar does not infringe any valid claim of the '274 Patent, the '684 Patent, and/or the '685 Patent.

60. Caterpillar is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against ESCO in accordance with the provisions of 35 U.S.C. § 285 or other statutes.

**WHEREFORE**, Caterpillar prays for judgment as follows:

(a) A preliminary and permanent injunction ordering ESCO to perform its obligations under the MPA, including (1) promptly filling all outstanding Firm Orders pursuant to their terms, (2) giving first priority to all of Caterpillar's current and future Firm Orders and (3) continuing to supply Caterpillar with all of its K-Series requirements at least until such time as Caterpillar can ensure an alternative source;

    (b)    A declaration that Caterpillar does not infringe any valid claim of the '274 Patent, the '684 Patent, and/or the '685 Patent;

    (c)    An award to Caterpillar of its costs and expenses, including reasonable attorney fees, in accordance with the provisions of 35 U.S.C. § 285 or other statutes; and

    (d)    Interest, costs, and such other relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Caterpillar, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

January 12, 2012                                     Caterpillar Inc.

                                                            /s/ Edward H. Williams
                                                            By:  One of its attorneys

John M. Touhy (ARDC #3128400)
Edward H. Williams (ARDC #6217053)
Baker & Hostetler LLP
191 North Wacker Drive
Suite 3100
Chicago, Illinois 60606
(312) 416-6200
jtouhy@bakerlaw.com
ehwilliams@bakerlaw.com

Timothy L. Bertschy (ARDC #199931)
John P. Heil, Jr. (ARDC #6237286)
Heyl, Royster, Voelker & Allen
124 S.W. Adams Street
Suite 600
Peoria, Illinois 61602
(309) 676-0400
tbertschy@heylroyster.com
jheil@heylroyster.com

*Attorneys for Caterpillar Inc.*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the factual statements set forth in the above and foregoing Verified Complaint are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies that he verily believes the same to be true.

/s/ Patrick F. Kozlowski

By: Patrick F. Kozlowski
On behalf of: Caterpillar Inc.